proceed to the first case Massey versus United States. Good morning Your Honor. May I please the court. My name is Darryl Fields and I represent Burgess Massey. This court should reaffirm the well reasoned statutory analysis in its withdrawn opinion in Jones. It's withdrawn? Yes, it's withdrawn. Okay. But it's statutory analysis is correct and it was withdrawn because of the Supreme Court because the Supreme Court had taken Beckles which involved which concerned whether or not the void for vagueness doctrine applied to the sentencing guidelines. But Beckles result and the subsequent decision in Jones did not contradict or change its analysis in the original decision. And its analysis was correct that under 2010 Johnson in 20, the Supreme Court's decision in 2010 in Johnson construed the physical force element of the, of ACCA to require a level of force that's strong, violent and extreme. Capable of producing. Capable of producing, yes. Physical injury. Yes, but violent force. The emphasis is on violence and in Castleman the court subsequently stated that minor uses of force would not meet this standard. Well, somebody punches somebody in the eye, is that, and causes a black eye, is that violent physical force? It probably is violent physical force. But the question is whether to commit a New York robbery, to commit its baseline robbery offense, the physical force required in New York necessarily requires that level of force, Your Honor. Because the categorical approach. Robbery doesn't require an injury but it requires physical force. Yes, robbery in New York requires physical force, but in essence. Or the threat. Or the threat. Immediate use of physical force. That's correct, Your Honor. What about under the New York Court of Appeals decision in Miller which talks about forcible stealing and there has to be sufficient force or the threat of force to compel someone to deliver property to you or to overcome resistance. Why isn't that enough? Well, one thing, no. First of all, Miller concerned whether or not an attempted first degree robbery with other aggravators that don't exist here was enough. The discussion is of the phrase forcible stealing. Yes, and in that discussion Miller also discusses, mentions the risk of violence from such conduct which is something that goes to the residual clause. Anything concerning the risk of violence. So Miller is broader in its definition than ACCA's definition of what physical force is required in the elements clause of ACCA. Yes, Miller in 87 New York second at 216 says an offense poses a danger to a person. So it uses that sort of standard which is more of a residual clause sort of consideration. The risk of violence. There's always a risk of violence in any robbery which is why Mr. Miller could never, Mr. Massey could never have brought this challenge before the 2010 decision in Johnson. I have a more preliminary problem. Yes, Your Honor. When he was sentenced, this is 830, the court was quite clear. It was saying because the statutes for robbery, third degree, assault, and second degree all involve the use or attempted use of force. He didn't sentence him under the residual clause. He sentenced him under the use of force. Yes, Your Honor. And the district court reaffirmed that later on and I realize that it had some fascination subsequently with regard to this application. Yes, Your Honor. How much clearer can it be? The court only mentioned the elements clause. The district judge only mentioned the elements clause in 2005 and 2008. What are we supposed to do? Are we supposed to say that maybe in the back of his mind he was also thinking the residual clause? No. He says in his decision that I'm appealing from that he was only thinking of the elements clause. So would you concede that he was only, that the district court was quite clear that it was correct that it sentenced him under the force clause? On this record, the district court only mentioned the elements clause. Eddie mentioned it three times. No doubt. On the three occasions. There's no doubt he sentenced him under the force clause. This record, this record just, in this record, yes, on this record he only mentioned the elements. He never mentioned. He never mentioned the residual clause. He never did. But the statute requires that the petition's 2255 motion rely on the new decision. If he'd had an initial petition under Johnson 1, he loses. Well, under the government, you mean if he had brought it in 2010, within a year of 2010 Johnson? Right. Well, he'd already brought, he'd already brought a 2255. Under the government, what the government says in its brief is he could never have litigated this 2010 Johnson decision because the, for a second or successive petition, he would need to show a constitutional rule. Right. And 2010 Johnson is a statutory rule. Right. But if it had been his first 2255 in 2010, he could have, he could, he could have brought it. That's right. Is the 2255 based upon what he could have done as opposed to what he did do? No, it's based on what, what he relies on. And our position, as the district court found, is that reliance under the statute means what does he need to win? To win his Johnson, to win at the elements clause. And he needs 2015 Johnson to win under the residual clause. Your Honor, what's the rule? If we agree with you, the rule is that every single person, uh, char or who gets sentenced under the force clause where it's crystal clear on the record that it's a force clause enhancement who then brings a 2255 on a separate matter, an ineffective assistance of counsel, can then get a 2255, uh, under Johnson too, alleging that he could have brought a Johnson one when it clearly he would have lost under Johnson one. Is that the rule? We'll have, we'll be faced with hundreds of habeas applications. I'm sorry. I'm sorry. I don't, I don't believe the rule has to go that far. He has to rely on, rely on as a district court correctly found means what does he have to do to win? To win, to, to make a valid argument that your predicate, your prior conviction wasn't an active predicate. You have to show you don't meet any of three criteria under ACA. You can't be on the enumerated crime. You can't be an element under the elements clause and you can't be under the residual clause. And before 2015 he could never have won under, he can never have argued. He never prevailed on a claim that his robbery conviction wasn't an active predicate. Your, your merits argument doesn't depend at all on Johnson too, correct? It depends entirely on Johnson one. Yeah, I don't, I'm not even sure you cite Johnson two in your merits discussion, correct? Yes or no. Well, I don't know. It, it doesn't depend on the merits discussion of the elements clause. It does. John 2010 Johnson is necessary to prove that what the residual clause is invalid. So he no longer can be, but the residual clause was never mentioned at sentencing or even in, you know, post conviction litigation. It just, it played no role in his sentence. It may have been in the background in the sense that the court could have relied on it in the event that Johnson had happened before sentencing, but, but he didn't. In other words, I think the concern is if we let you in the front door on the basis of Johnson two to make an argument about Johnson one, isn't that essentially just backdooring a statutory argument when Congress has been very clear that you're only entitled to bring this petition if there's a new constitutional rule that you're relying on. You're not, you're not actually relying on that. Oh yes, we are relying on it because you have a statute that has three criteria and he has to knock out all three. And so he needs to win 2015 John. He needs to knock out the elements clause, the residual clause, and of course it's not an enumerated crime. So he couldn't win. He couldn't. And on what basis do you say that he has to knock out the residual clause that there's nothing in the record suggesting that the court ever relied on the residual clause. You're assuming, you're assuming that judge Polly would have in the absence of the elements clause. That's right. But how, but he could not win a petition in 2012. So let's say that was his first petition. If he said, okay, I don't come under the elements clause because obviously a residual clause because any robbery involving the forceful taking creates the risk, potential risk of serious harm to a person. And the Supreme Court has said that whenever there's a statutory construction of a statute, it's assumed that, that, that the correct reading was, was that the correct reading at the time of the decision was always a correct reading. So Mr. Massey in 20, in 2005 and the district court in 2005 when it was found that his robbery meant the elements clause was incorrectly interpreting the statute. And we know that, but we didn't know that till 2010. All right. You have some time for rebuttal. Yes, Your Honor. Thank you. May it please the court. My name is Juan Shin. I'm an assistant U.S. attorney in the Southern District of New York and I represent the United States. Your Honor, defense counsel's concession that Judge Pauly at sentencing relied solely on the force clause to apply the ACCA enhancement is dispositive in this case. Well, let me ask you, you, you cite the standard in your brief from the In re Henry case that a claim quote unquote relies on a new constitutional rule if the applicant quote would benefit from the new rule he seeks to invoke in the petition. He benefits from Johnson too, no? I mean, but for Johnson too, I think the point is that any, any relief would be foreclosed by the residual clause. It's only with the arrival of Johnson too, that he can get any relief. So in that sense, he benefits from, and on your own standard, he's therefore relying on a constitutional rule, correct? Respectfully, Your Honor. No, because Judge Pauly in this case did not rely on the residual clause, there's absolutely nothing in the record to rely on the residual clause. The government and its sentencing submission relied solely on the force clause to argue for the enhancement. In light of the clear record in this case, there is no reason to believe that the defendant would benefit from Johnson too. And, and Your Honor, I believe that particularly instructive is the first circuit's recent decision in DeMott v. United States. What if Pauly, Judge Pauly had said he qualifies under both the If the record was not clear, Your Honor, uh, the government's position is that in light of a habeas petitioner's burden to show entitlement to relief, uh, that he would, again, he would not be able to show that he is actually relying on . . . The district court apparently concluded that the petitioner met his burden of . . . the district court in, in the, in ruling on the petition says, uh, relies, talks about the on, on 2015 Johnson. And why, why do we not defer to the district court on that? The district court thought it was 2015 Johnson was of some benefit. Respectfully, Your Honor, this court should defer to, uh, Judge Pauly's factual determination about what actually happened on the record of the sentencing. And on that, he was clear that it was, there was no doubt that he relied solely on the force clause. He then went on to . . . Your Honor, that's a purely legal question, and therefore, that would be a de novo review. And, uh, that's exactly my point, Your Honor, is that after finding that he had relied solely on the force clause, Judge Pauly then went on to say, in light of concern, in light of concern about whether the petitioner would ever be able to bring a Johnson 1 claim, he would interpret, uh, the 2255 requirements in a way that would permit the claim to go on to reach the merits. That was a legal interpretation that we respectfully disagree with in the, uh, in this court. The, the language of 2255 is clear. The petitioner must rely on a new constitutional rule that has been made retroactive. And again, Your Honor, um, several circuit courts, including most recently the DeMott case, have issued instructive decisions about when a petitioner actually relies on Johnson 2. Has any court of appeals reached the question in this context, in the Johnson context, either a hybrid Johnson claim or a claim as here where the district court sentencing relies solely on one of the clauses? So, uh, DeMott, DeMott reached that issue . . . No, I'm asking any court of appeals, but, but DeMott, DeMott didn't involve Johnson, it involved Mathis, correct? It involved a Mathis claim, but there was also a Johnson 2 claim in the mix there. But I'm asking Johnson, Johnson. It's unfortunate they're both called Johnson. It is, Your Honor. The cases we've cited on our brief do not squarely reach those holdings because they weren't necessary. However, Giozzo's, for example, the Ninth Circuit case that permitted a claim to go forward in those circumstances, in the facts of that case, it recognized that if a district court relied solely on the force clause, a Johnson 2 claim, uh, would not be, uh, could not be used to bootstrap in a Johnson 1 claim. Similarly, the Douglas case out of the Seventh Circuit, um, on the first, uh, section 22, 255 motion said that the, the petition would have been untimely because it actually was relying on Johnson 1 and not Johnson 2. However, the court there accepted the government's, um, waiver of that, of that statute of limitations defense. And why did the . . . it seems troubling that the Department of Justice would waive in that a policy with respect to when the government is waiving on this issue as opposed to pressing it? It seems a little troubling that Mr. Douglas is permitted to proceed when Mr. Massey may not be permitted to proceed. Your Honor, I don't know why the government in Douglas, uh, waived its statute of limitations defense. I can speak to the current policy of, uh, the Department of Justice, which is that in circumstances like these, when it is absolutely clear that a, um, a defendant was convicted solely on the basis of the force clause and therefore would not benefit from Johnson 2, that, uh, the government is permitted to assert its procedural defenses and . . . Judge . . . Judge Pauly said, I quote, on one hand, this court unequivocally found that Massey's prior convictions were ACCA predicates under the force clause, not the residual clause. And he said . . . he referenced the sentencing transcript page that I read, uh, to your opponent. What I think troubled Judge . . . Judge Pauly was Jones. Uh, in the . . . what happened with Massey . . . with Mr. Massey, he made an initial petition which was denied. Jones has decided. Then we . . . we retraced ourselves and allowed this appeal to come up. If Jones hadn't been decided, which was then withdrawn, we'd initially denied this petition, uh, for the . . . for the . . . for the obvious reason that it was unequivocal and Pauly had said so. And Judge Pauly's . . . part of the reason why he grants is because of Jones even though it's vacated. And he says he's troubled by the fact of the possibility of the instant petition of being denied on procedural grounds. Well, I can understand that. I . . . I can appreciate his concern. But his . . . his opinion itself states . . . he used the word says that a 2255 petition raises a . . . a colorable claim jurisdictionally that there's potential relief from a Supreme Court precedent which clearly does not apply to him. Because of the potential that if it did apply to him, he might get some relief. But on the facts of his case, it clearly does not apply. Is that it? I . . . I . . . We'll have hundreds of these. I'm . . . I'm sorry, Your Honor. We'll have hundreds of these. How many ACCA enhancements do you have in the last year? I . . . I . . . I don't have that number, Your Honor. 50? In the Southern District? I . . . I . . . Respectfully, I don't . . . I don't know. But . . . I . . . I'd be happy if . . . if . . . if Your Honor would like to submit a . . . submit the information after the argument. Let's go to the merits. Let's go to the merits. Does Johnson 2 apply to this case? Johnson 2. Johnson 2 does not apply to this case because, again, he was not sentenced on the residual clause. On the merit . . . on the Johnson 1 issue . . . Is there any . . . even the remotest possibility that Johnson 2 applies to this case? No, Your Honor. Because? Because Judge Pauly was crystal clear both at the time of sentencing and in reviewing the first Section 2255 motion and in the decision below on the second . . . second Section 246 clause. And . . . and . . . and with respect . . . Am I . . . am I correct if . . . if he had filed a petition in 2012, the government's position would have been, one, this is not a constitutional rule. Two, even if he benefits from Johnson 1, him . . . his . . . he would still qualify under the residual clause, correct? Um . . . I . . . I don't know, Your Honor. I . . . My understanding is that at the time of the . . . because of the 1995 Brown decision that held that New York . . . all degrees of New York robbery are violent felonies under the force clause, I don't believe that there wasn't . . . The government's argument would be, one, not a constitutional rule. Two, even if it is a . . . even if he can benefit from Johnson 1, Brown, et cetera, you know, those precedents survive Johnson 1. And three, even if they don't, he would still qualify under the residual clause. That . . . that may well have been the government's position. Doesn't he benefit from Johnson 2 in the sense that it cuts off that third argument? Even if it's not dispositive, he still needs to . . . Only in a theoretical sense, Your Honor. He would still be . . . he would still be limited to . . . He's not going to get out of jail, is he? Senses are getting reduced, isn't it? Exactly, Your Honor. Given this . . . given the clarity of the record on this . . . You're . . . you're . . . you're almost out of time. Why don't you talk about the merits? Because if you're . . . if the government is correct on the merits, all of the above is . . . is . . . is not . . . need not even be decided. Thank you, Your Honor. Respectfully on the merits, New York law . . . the New York Court of Appeals has made clear that robbery under New York law meets the definition of violent force, violent physical force, set forth in Johnson 1 by the Supreme Court. As Judge Chin, as you referenced, People v. Miller explicitly relies on the plain text of the New York robbery statute and the definition of forcible stealing to say that robbery requires force to overcome resistance, to permanently deprive the victim of property by compelling the victim to give up property and by quashing any resistance to that act. It interpreted the plain text of the statute to require that force. And although counsel . . . counsel referenced this language in the decision about where the . . . where Miller recognized that robbery inherently poses a danger not only to property but to the person, he calls that a residual claim type of argument. But it's actually the New York Court of Appeals recognizing that the force under New York robbery has to be sufficient to create that danger. And that necessarily means that it is capable of causing physical pain or injury to another person. How do you square that with the Bennett decision, which seems to contemplate that one could be convicted without force? I understand in your brief you seem to try and construe it as a threat of force, but the court in Bennett doesn't necessarily frame it that way. In other words, it treats the blocking itself as force. Your Honor, the Bennett decision itself, it's so sparse, as unfortunately many appellate division decisions are, that I think it's hard to draw many inferences like that. What's clear is that on the facts of the case that are described in the opinion itself, there was a clear threat of force. And . . . Well, it's an appellate division decision in any event, isn't it? Yes, Your Honor. I mean, the appellate divisions are capable of wrongly applying New York law, but we look to the New York Court of Appeals for what the law is, don't we? That's correct, Your Honor. We've laid out . . . Go ahead. We've laid out arguments in our brief for why the appellate division decisions cited by the defense are actually properly understood to require the requisite degree of force. But ultimately, this Court's task is to predict what the New York Court of Appeals would say, to rely on what the New York Court of Appeals has said in the past. And in that respect, Miller and Juergens are both clear. The force required under the robbery statute needs to be enough to permanently deprive and compel the victim to turn over property. That's in the plain text of the robbery statute. And in Juergens, the Court of Appeals agreed with the parties in saying that mere snatching, pickpocketing, or jostling is not sufficient. So in light of those two decisions, which clearly lay out that New York robbery requires a degree of force sufficient to actually pose a danger to the victim, this Court's better prediction would be that the Court of Appeals ultimately, if it were to decide this case in the future, would agree that the standard is sufficient for Johnson 1, and not relying on the appellate division decisions, which, if parsed and read in . . . That's part of the problem when you start getting into this. And Judge Sutton made a reference to it in Perez, when he was dealing with the same statute, a third-degree rob out in the Sixth Circuit. The warning is that it's almost like you get into a factual analysis of this, as opposed to doing the categorical approach, which you're supposed to be doing, by starting to look at applications of the statute by lower courts. It seems to me we stick to the elements, as explained to us by the final arbiter of what the elements are, and not get into the weeds with regard to the facts of lower court interpretations or misinterpretations of what the statute requires. I agree, Your Honor, particularly in light of the fact that the intermediate appellate decisions often describe the facts in only a sentence or two, and so it's difficult to draw conclusive inferences based on that. What the Court should follow is the clear language of both the New York statute and the Court of Appeals decisions interpreting that statute. Thank you. Thank you. We'll hear the rebuttal. Yes, Your Honor. The law is that when there isn't a New York Court of Appeals decision on a particular question, that the decisions of the appellate divisions are helpful indicators for ascertaining how the New York Court of Appeals would rule. And this Court cannot disregard such decisions unless it is convinced by other persuasive data that the New York Court of Appeals would decide otherwise. That is Mikowski v. Home Depot, cited in Jones 1, in its opinion at pages 14 and 15. Jones 1? In Jones 1, yes. And that citation is 225, Fed Third, 113, at 116. And also there's 403, there's DiBella v. Hopkins, 403, Fed Third, 102, 112, which also says you look to the appellate, if there isn't a New York Court of Appeals decision dispositive, you look to the appellate division decisions as evidence, and you follow those unless there's some persuasive reason to decide otherwise. And the Jones Court concluded that there isn't. I put you into a curious position of looking at the facts of each particular case and saying, well, these facts are within the facts of what the New York Court of Appeals was deciding as to what force means. No, you are, the intermediate, I'm sorry. Doesn't that take you away from what you're supposed to be doing? No, there's enough facts in the appellate division decisions to tell you what the holding is, to support the holding. Bennett was decided under the force clause of robbery, not the threat. I'm intimately familiar with that. Yes, I know that you are, Your Honor. But they are appellate courts. They give you the facts necessary for the holding. I certainly are. I served at the appellate division myself. Yes, Your Honor. Yes. But they give you the facts that are needed for the holding. Why aren't Miller and the words of the New York statute dispositive? Because 2010 Johnson. Forcible stealing and then the language about, you know, overcoming resistance. Don't those things necessarily imply violent force? No, because in 2010, well, first of all, as the Jones Court pointed out, the examples are like of Saffong, where the only force is the defendant's pulling his hand away from the grasp of the clerk. The amount of force needed is not the violent force that was defined in 2010 Johnson. So you're back into the facts again in a lower court case? No, Your Honor. The glove in the hand was an appellate division case too, wasn't it? Yes, that's Saffong. That's what I'm saying. I mean, this is the problem that you get into. We're back into looking at specific factual interpretations of a statute from a lower court and suddenly saying, well, that's the universal law of New York. When the New York Court of Appeals could have, if it wanted to, said that's wrong, but they chose not to do so. I mean, for some reason or another. But this is the problem. All of a sudden now we're doing factual analysis of New York law. I understand you want us to do that, but I'm reluctant to do that. Your Honor, it's just the categorical approach requires that it be shown that . . . It is not the categorical approach at all. It is the categorical approach, I believe, Your Honor, that they must necessarily require the level of force discussed in 2010 Johnson and in the majority opinion in Castleman. And that level of force is not necessary to be convicted of robbery. And that's why those appellate divisions are so sparse, Your Honor, because the facts they need to show the force element aren't anywhere close to the level of force required under ACCA. We have your argument. Thank you. We'll reserve the decision.